UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UUSI, LLC,

    Plaintiff/Counter-Defendant,

v.

SAMSUNG ELECTRONICS
CO., LTD, *et al.*,

    Defendants/Counter-Claimants.
_____/

Case No. 1:15-cv-146

HON. PAUL L. MALONEY

## OPINION AND ORDER

Plaintiff UUSI LLC, d/b/a Nartron, filed this suit against Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. for allegedly infringing on U.S. Patent No. 5,796,183 ("the '183 Patent"). This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction. (ECF No. 160). Defendants argue that Plaintiff lacks standing because it does not have any interest in the '183 Patent. On March 4, 2024, the Court heard oral argument on Defendants' motion. (ECF No. 211). The matter is fully briefed and ready for decision. Because the plain language of the relevant assignments establish that Plaintiff does not have any interest in the '183 patent, Defendants' motion to dismiss will be granted.

## I. BACKGROUND

### a. Procedural Posture

On February 13, 2015, Plaintiff UUSI LLC, d/b/a Nartron filed this suit against Defendants for allegedly infringing on the '183 Patent. (ECF No. 1). On May 2, 2016, U.S. District Judge Janet T. Neff stayed and administratively closed this case until the resolution of the *inter partes* review in the U.S. Patent and Trademark Office. (ECF No. 62). The case remained administratively closed for over seven years until it was reopened on May 25, 2023. (ECF No. 87). After a status conference and an unsuccessful mediation, (ECF Nos. 90 and 93), the parties briefed the claim construction issues and prepared for a *Markman* hearing. On December 15, 2023, Judge Neff held a *Markman* hearing. (ECF No. 118).[1]

On May 31, 2024, Defendants filed a motion to stay and requested permission to file a motion to dismiss based on lack of standing. (ECF Nos. 134 and 135). Judge Neff denied the stay request but permitted Defendants to file the underlying motion to dismiss. (ECF No. 147). The motion was fully briefed as of August 15, 2024. (ECF Nos. 160, 161, 162, and 163). After that date, UUSI filed two "corrected" declarations of Norman Rautiola (ECF Nos. 170 and 172), which partly prompted Defendants to file a motion to supplement (ECF No. 175).[2] On March 4, 2024, the Court heard oral argument on Defendants' motion to dismiss. (ECF No. 211). After the hearing, UUSI filed a motion for leave to file a sur-reply. (ECF No. 213).[3]

---

[1] No ruling has been issued on the claim construction issues.
[2] The case was reassigned to the undersigned pursuant to AO No. 24-CA-079 on October 1, 2024. (ECF No. 171).
[3] The parties have also fully briefed cross-motions for summary judgment. (ECF Nos. 179 and 184).

b. Facts Relevant to Defendants' Motion to Dismiss

At issue in this motion to dismiss is the assignment history of the '183 Patent. There are two legal entities involved—Oldnar Corporation and UUSI LLC. Both entities were created by Norman Rautiola, and the names of these entities have changed numerous times over the years. Below are two tables showing the changes:

| Oldnar Corporation | |
|---|---|
| May 1968 | Natronic Company is created |
| June 1968 | Nartronic Company's name changed to Nartron Corporation |
| Mar. 2010 | Nartron Corporation's name changed to Oldnar Corporation |
| 2013 | Oldnar Corporation's name changed to Gen X Microsystems |
| 2014 | Gen X Microsystems' name changed back to Oldnar Corporation |

| UUSI LLC | |
|---|---|
| Dec. 12, 2008 | Usi Nartron LLC is created |
| Dec. 4, 2009 | Usi Nartron LLC's name changed to UUSI LLC |
| Mar. 31, 2010 | UUSI filed a Certificate of Assumed Name stating that it would conduct business under the name Nartron. |

There are three separate interests in the '183 Patent to track. These interests, named after the inventors, are referred to as the Hourmand Interest, the Washeleski Interest, and the Cooper Interest. Hourmand was the individual who initially applied for the '183 Patent. Washeleski and Cooper were later added to the patent following a 2010 lawsuit. *See Nartron Corp. and UUSI, LLC v. Hourmand*, No. 1:10-cv-691 (W.D. Mich. 2010).

When UUSI filed this lawsuit, it asserted that it "was the owner and assignee of all right, title and interest in and to the '183 Patent." (ECF No. 1 at PageID.4). On January 14,

2016, in response to Defendants' interrogatory regarding assignments of interest in the '183 Patent, UUSI directed Defendants to the United States Patent and Trademark Office' ("USPTO") public listing of recorded assignments. (ECF No. 161-23 at PageID.1937).[4] According to the recorded assignments, Nartron Corporation assigned its entire interest in the '183 Patent (along with several other patents) to UUSI's predecessor, Usi Nartron, on December 17, 2009. (ECF No. 161-16).

The parties now agree that the December 17, 2009 assignment did not transfer any interest in the '183 Patent because Nartron Corporation had already assigned its interest in the '183 Patent to Mr. Rautiola in his individual capacity on October 30, 2008. (ECF No. 161-15). Even though the October 30, 2008 assignment was not recorded with the USPTO, there is no dispute that this assignment is valid. Because Nartron Corporation had already transferred its interest in the '183 Patent to Mr. Rautiola in 2008, it could not have transferred any interest in 2009.

After discovery closed on May 3, 2024, Defendants raised the standing issue with UUSI. In response, UUSI conducted a further investigation and produced additional documents—nine years after the beginning of this lawsuit—purporting to show new theories of ownership. UUSI now argues that it owns 100% interest in the '183 Patent based on the following assignments:

Hourmand Interest:

(1) Hourmand to Nartron Corporation on January 31, 1996;
(2) Nartron Corporation to Mr. Rautiola on October 30, 2008;

---

[4] According to Defendants, this discovery response had still not been supplemented at the time they filed the motion to dismiss.

    (3) Mr. Rautiola to Usi Nartron, LLC on December 12, 2008; and

    (4) Usi Nartron, LLC to UUSI, LLC d/b/a Nartron via entity name changes filed with the State of Michigan on December 4, 2009 and March 31, 2010.

<u>Washeleski Interest:</u>

Option 1:
    (1) Washeleski to Nartron Corporation in 1998 via Mr. Washeleski's 1985 and 1992 employment agreements; and

    (2) the same transactions (2) to (4) for the Hourmand interest above.

Option 2:

    (1) The April 14, 2010 assignment which mistakenly identified "Nartron Corporation," but was meant for UUSI, LLC.

<u>Cooper Interest:</u>

(1) The April 14, 2010 assignment which mistakenly identified "Nartron Corporation, but was meant for UUSI, LLC.

Defendants argue that UUSI does not have any interest in the '183 Patent. They contend that UUSI does not own the Hourmand interest because the December 12, 2008 assignments did not include the '183 Patent. The Hourmand Interest, therefore, remains with Mr. Rautiola. Defendants also contend that the Washeleski and Cooper Interests were transferred under the April 14, 2010 assignment to the Nartron Corporation, which is now Oldnar Corporation.

### III.    LEGAL STANDARD

Article III, Section 2 of the Constitution provides that judicial power extends only to cases and controversies. U.S. Const. Art. III § 2. Because of this constitutional restriction, federal courts "courts of limited jurisdiction." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). Standing implicates subject-matter jurisdiction. *United States Dep't*

*of State*, 931 F.3d 499, 507 (6th Cir. 2019). When a plaintiff lacks standing, the court lacks subject-matter jurisdiction over the lawsuit. *Id.*

"A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction." *A.B. v. Mich. Dep't of Educ.*, 2021 WL 5238728, at *3 (W.D. Mich. Nov. 4, 2021). When faced with a factual challenge, the Court has "broad discretion" in over "what evidence to consider." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015). In considering a factual attack, the Court "may look outside the pleadings to determine whether subject-matter jurisdiction exists." *Id.*

To show standing in the patent infringement context, the plaintiff must "demonstrate that it held enforceable title to the patent at the inception of the lawsuit." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003). If the plaintiff cannot show standing, "the jurisdictional defect cannot be cured," and "the suit must be dismissed." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005).

## IV. ANALYSIS

To determine whether UUSI has any interest in the '183 Patent, the Court must interpret various contracts. "In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Tr.*, 745 N.W.2d 754, 757-58 (Mich. 2008). "Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which

can be gathered from the whole instrument." *Laevin v. St. Vincent De Paul Society of Grand Rapids*, 36 N.W.2d 163 (Mich. 1949) (quoting *Draper v. Nelson*, 236 N.W. 808, 809 (Mich. 1931)). "Plain and unambiguous contract language cannot be rewritten by the court under the guise of interpretation, as the parties must live by the words of their agreement." *Harbor Park Market v. Gronda*, 743 N.W.2d 585, 588 (Mich. Ct. App. 2007). "Extrinsic evidence [of intent] may only be considered if the contract is ambiguous." *See Dematic Corp. v. UAW*, 635 F. Supp. 2d 662, 672 (W.D. Mich. 2009).

### A. Hourmand Interest

UUSI owns the Hourmand Interest if it was included in the December 12, 2008 assignments. The Court, therefore, must determine whether the assignments on December 12, 2008 included the '183 Patent.

There were two assignment agreements on this date. In one agreement, Nartron Corporation assigned "all of [its] right, title and interest in and to all of its assets and property of every kind" to Mr. Rautiola. (ECF No. 161-20 at PageID.1886). The assignment is signed by Mr. Rautiola in his individual capacity and as president and director of Nartron Corporation. (*Id.*). There is no dispute that this assignment does not include the '183 Patent because Nartron Corporation had already assigned the '183 Patent to Mr. Rautiola on October 30, 2008. In the second agreement, Mr. Rautiola assigns "all of the assets and property of Nartron Corporation (the 'Assets') under a certain Assignment Agreement dated Dec 12 2008" to UUSI's predecessor, Usi Nartron. (ECF No. 161-21 at PageID.1889). The assignment is signed by Mr. Rautiola both in his individual capacity and on behalf of Usi Nartron. (*Id.*).

7

Did the second assignment agreement include the '183 Patent? According to UUSI, the term "Assets" includes the '183 Patent because Assets means "all of the assets and property of Nartron Corporation." UUSI cites several cases for the proposition that when a contract defines a term in quotes or parentheses, the definition appears in the words that appear before the parentheses, not the words that appear after them. *See Lawson v. Spirit AeroSystems, Inc.*, 61 F.4th 758, 764 (10th Cir. 2023) ("The employment agreement defines the term Business by putting it in parentheses, which follows the definition given in the preceding recital."); *Novacor Chems., Inc. v. United States*, 171 F.3d 1376, 1381 (Fed. Cir. 1999) ("general principles of construction support the view that a parenthetical is the definition of the term which it follows"); *Olympus Ins. Co. v. AON Benfield, Inc.,* 711 F.3d 894, 898 (8th Cir. 2013) ("in drafting the contract, the parties utilized the integrated definition convention and placed 'Subject Business' directly after 'the placement and servicing of all of Client's reinsurance contracts.'"). None of the cases, however, applied Michigan law.

Michigan law requires the courts to "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *See Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 468 (2003); *see also JP Morgan Chase Bank NA v. Winget*, 602 F. App'x 246, 262 (6th Cir. 2015) (rejecting an interpretation because it "ignores [contractual language] altogether"). UUSI's interpretation of the term Assets renders an entire phrase surplusage. The Assets must be limited by the phrase "under a certain Assignment Agreement dated Dec 12 2008." There was only one other assignment agreement dated December 12, 2008 and that agreement did not include the '183 Patent. This is the only possible interpretation that gives any meaning to the phrase—

8

"under a certain Assignment Agreement dated Dec 12 2008." In the Court's view, the language in the assignment agreement is unambiguous.

Because the language is unambiguous, the Court need not consider any extrinsic evidence. But even if the Court were to consider extrinsic evidence, the two legal entities and Mr. Rautiola's conduct over the past fifteen years show that it was never intended for the '183 Patent to be part of the December 12, 2008 assignment. Most notably, Mr. Rautiola and his lawyers have repeatedly said UUSI's ownership of the '183 Patent stems from the December 17, 2009 assignment, which they just recently learned was clearly invalid. For example, on July 20, 2010, UUSI and Nartron Corporation asserted in a complaint filed in this Court: "On December 17, 2009, Nartron assigned the '183 patent to UUSI by an Assignment recorded at . . . the United States Patent and Trademark Office." (ECF No. 161-10 at PageID.1827). And, two years later, Mr. Rautiola again relied on the December 2009 recorded assignment in a signed declaration. (ECF No. 161-12 at PageID.1854-1856). Even in this lawsuit, UUSI relied on the assignments recorded with the USPTO to show ownership in '183 Patent until Defendants raised the standing issuing. (ECF No. 161-23 at PageID.1937).

UUSI argues that Mr. Rautiola's intent must control if the assignment is ambiguous. According to his declaration, Mr. Rautiola intended the assignment to include '183 Patent. (ECF No. 162-1 at PageID.2005).[5] He considered the '183 Patent the most valuable asset and it would have made no sense for him to form a new company to hold Natron

---

[5] The Court also notes that Mr. Rautiola's self-serving declaration is troubling due to inconsistencies with his testimony in *UUSI, LLC v. Apple, Inc.,* No. 3:18-cv-4637. (*See generally* ECF No. 175).

9

Corporation's assets and not include the most valuable asset. (*Id.*). But the contemporaneous extrinsic evidence shows the complete opposite. Mr. Rautiola consistently relied on the December 17, 2009 assignment. It is clear that the '183 Patent was not included, nor intended to be included, in the December 12, 2008 assignment.

### B. Washeleski/Cooper Interests

UUSI first argues that it owns the Washeleski Interest based on 1985 and 1992 employment agreements. But even assuming that the employment agreements made the Washeleski Interest go to Nartron Corporation, UUSI would still have to show the interest was included in the December 12, 2008 assignment. As discussed above, it was not.

UUSI next argues it owns the Washeleski and Cooper Interests based on two April 14, 2010 assignments. (ECF No. 162-2 at PageID.2120-2123). These two assignments were signed by Washeleski and Cooper respectively, and each assigned his interest in the '183 Patent to "Nartron Corporation." (*Id.*). UUSI contends that this was a clerical error because Nartron Corporation ceased to exist after March 30, 2010. After March 30, 2010, Nartron Corporation became Oldnar Corporation. UUSI, through Mr. Rautiola's declaration, states that the parties intended to write Nartron, which reflects UUSI d/b/a Nartron. (ECF No. 162-1 at PageID.2008).

Defendants do not believe there was any mistake. But even if using "Nartron Corporation" was a mistake, Defendants contend that the evidence show that the parties meant "Oldnar Corporation."

Mr. Rautiola's belief that these assignments to Nartron Corporation was clerical error is not particular helpful because he was not a party of the assignments. In the Court's view,

10

it is not entirely clear if the assignments to Nartron Corporation were an error. While Nartron Corporation was operating as Oldnar Corporation at the time of April 14, 2010 assignments, the name Nartron Corporation was still being utilized in court documents and patent filings. For example, in the July 10, 2010 complaint, UUSI and Nartron Corporation asserted that "Mr. Washeleski and Dr. Cooper [had] assigned to Nartron [defined as Nartron Corporation] their rights as joint inventors of the '183 patent." (ECF No. 161-10 at PageID.1843). In a August 2010 consent judgment, UUSI and Nartron Corporation reiterated that "John M. Washeleski and Stephen R.W. Cooper ha[d] assigned their interests as inventors of the '183 patent to plaintiff *Nartron Corporation*." (ECF No. 161-11). And, on August 11, 2011, Mr. Rautiola represented in a sworn declaration that Nartron Corporation—not UUSI—was the "assignee of the joint inventors of" the '183 patent. (ECF No. 161-12 at PageID.1854-1856).

But even if there was a clerical error, the Court finds that Oldnar Corporation was the intended assignee. Oldnar Corporation was the new name for Nartron Corporation. And, in the filings discussed in the preceding paragraph, UUSI and Mr. Rautiola believed that Nartron Corporation held the interest in the '183 Patent. If Nartron Corporation did not exist, common sense dictates that Oldnar Corporation was the intended assignee—not UUSI.

In sum, both the unambiguous language of the relevant assignments and the contemporaneous extrinsic evidence show that UUSI did not have any interest in the 183 Patent when it filed this lawsuit. Therefore, UUSI does not have standing.

## V.     CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (ECF No. 160) and motion to supplement (ECF No. 175) are **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' motion for leave to file a sur-reply. (ECF No. 213) is **DENIED** as untimely.[6]

**IT IS FURTHER ORDERED** that the motions for summary judgment (ECF Nos. 179 and 184) are **DISMISSED AS MOOT**.

A separate judgment will issue.


Dated:  March 14, 2025                               /s/ Paul L. Maloney
                                                           PAUL L. MALONEY
                                                           United States District Judge

---

[6] In the proposed sur-reply, UUSI attempts to raise new standing arguments filed seven months after the motion to dismiss was fully briefed and a week after the Court held a hearing on the motion.